In re SAFE HARBOUR FLORIDA
HEALTH CARE PROPERTIES,
INC., Debtor.

Angela Stathopoulos, As Chapter
7 Trustee, Plaintiff,

v.

Leader Healthcare Management,
Inc., et al., Defendants.

Bankruptcy No. 8:03–bk–3356–ALP.
Adversary No. 8:05–ap–90–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 7, 2008.

Kenneth G.M. Mather, for Trustee, Akerman Senterfitt, Tampa, FL, for Plaintiff.

Andrew D. McNamee, Patricia Redmond, Stearns Weaver Miller et al., Miami, FL, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### (Doc. No. 79)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in this Chapter 7 case is a Motion for Summary Judgment, filed by the Defendants, Leader Healthcare Management, Inc. (Leader), Corum Healthcare Management, Inc. (Corum), Elite Healthcare Management, Inc. (Elite), Avi Klein (Klein), and Aaron Davis (Davis) (Doc. No. 79).

The Chapter 7 Trustee, Angela Stathopoulos (the Trustee), commenced this adversary proceeding by filing a Complaint against the Defendants. In response, the Defendants filed this Motion for Summary Judgment. In their Motion, the Defendants contend that there are no genuine issues of material fact and they are entitled to; (1) a resolution of their claims in their favor, as a matter of law, relying on the doctrine of equitable estoppel and; (2) a dismissal of the Complaint filed against them by the Chapter 7 Trustee.

The facts relevant to the resolution of the legal issues raised can be summarized as follows:

Prior to August 2002, Safe Harbour Florida Health Care Properties (Debtor) was operating a nursing home facility located in Lakeland, Florida. The Debtor leased the facility from Omega Healthcare Investors, Inc. (Omega). On August 1, 2002, the Debtor entered into three separate agreements with Leader pertaining to the purchase of the facility. The first was an Operations Transfer Agreement, the second was a Management Agreement, and the third was an Accounts Receivable Management Agreement. Pursuant to the Operations Transfer Agreement (Ex. B to Defs.' Mot. for Sum. J.), the Debtor transferred to Leader assets relating to the operations of the facility, and Leader assumed operations of the facility (Klein Aff. ¶ 4; Operations Transfer Agreement ¶ A). Specifically, the Debtor transferred to Leader:

All inventory, patient lists, and records (to the extent transferable in accordance with applicable law), furniture, fixtures, equipment, supplies and to the extent permitted by applicable law, all permits, licenses and certificates of need and other rights held by [Safe Harbour] with respect to the ownership or operation of the facilities.

(Klein Aff. ¶ 4; Operations Transfer Agreement ¶ 1.1(a)). Pursuant to the Management Agreement (Ex. C to Defs.' Mot. for Summ. J.), the Debtor engaged Leader "for the purpose of rendering management, administration, purchasing services, financial assistance and other management, support and administrative services needed for the operation of the facility," pending the approval by the Agency for Health Care Administration of the license transfer to Leader. (Klein Aff. ¶ 5.) Pursuant to the Receivables Management Agreement (Ex. D to Defs.' Mot. for Summ. J.), Leader "assume[d] responsibility to collect and resolve all Medicaid rebasing, step-ups, or any/and all increases in payments of accounts receivable" for the Debtor. (Klein Aff. ¶ 6, Receivables Management Agreement p. 1).

A dispute developed between the parties regarding the agreements, and the Debtor filed a voluntary Petition for relief under Chapter 11 on February 20, 2003. Shortly after filing, the Debtor filed a Motion to Reject Executory Contracts seeking to reject all three agreements, claiming they were executory contracts pursuant to section 365(a) of the Bankruptcy Code. The Defendants resisted the Debtor's motion and contended that the agreements are not executory and, therefore, not subject to section 365 of the Code and cannot be rejected. It appears from the record, without dispute, that on June 23, 2003, the Court scheduled the final evidentiary hearing concerning the Debtor's Motion to Reject the three agreements. At the hearing, before the commencement of the trial, the parties announced they had reached an agreement (the Settlement Agreement) which would alleviate the necessity of trying the case. As evidence of the Settlement Agreement, the Defendants relied on the transcript of the hearing, particularly the language of the Court that the terms outlined "will control and will be binding on the parties, will be enforced out of court, subject of course to the parties superseding those terms by agreement in their written documents ... [and] if there are disputes that break out ... the provisions placed on the record will control, will be binding, and will be enforced by the court." (Final Evidentiary Hr'g Tr. 26, June 23, 2003.) At the end of the hearing, the Court announced the outcome of the hearing which provided, inter alia, that the Motion to Reject Executory Contracts would be heard on June 30, 2003, at 2:00

p.m. The Court further announced that the Debtor shall file and serve on all creditors, a motion seeking the approval of the Settlement Agreement "subject to the requirements of F.R.B.P. 9019 and the provisions of the Bankruptcy Code respecting confirmation" of the Settlement Agreement and that the Settlement Agreement shall be placed on record and shall be binding and enforceable by the Court. (Final Evidentiary Hr'g Tr. 33, 34, June 23, 2003.) On June 30, 2003, the Court entered an order granting Debtor's Motion to Reject Executory Contracts based on the alleged Settlement Agreement terms made at the hearing. (Order Grant'g Mot. to Reject Executory Contracts, Doc. No. 151, Gen. Case No. 03–3356).

On February 26, 2004, the Chapter 11 case was converted to a case under Chapter 7. The Trustee commenced an adversary proceeding against Defendants on February 25, 2005. Shortly after the commencement of the adversary proceeding, Defendants filed a Motion to Dismiss, seeking to dismiss all eight claims asserted by the Trustee in her Complaint, contending that the facts, as pled, failed to state a claim upon which relief could be granted and that the Chapter 7 Trustee was equitably estopped from pursuing her claims against them because the Defendants relied on the Settlement Agreement to their detriment. In due course, Defendants' Motion to Dismiss was heard. On March 16, 2006, the Court concluded first, that the Settlement Agreement involved was not within the ordinary course of the Debtor's business; and, second, that "the agreement was never reduced to writing ... and was never approved by the court after notice to creditors in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure." (Order Den. Defs.' Mot. to Dismiss, 12).

In the present matter under consideration, the Defendants assert basically the same argument as in their Motion to Dismiss, contending that the claims asserted by the Trustee are barred under the doctrine of equitable estoppel, and, therefore, the claims cannot be maintained and the adversary proceeding should be dismissed.

A review of the record reflects that there is no question that no motion was ever filed to seek an approval of the Settlement Agreement; no notice was given to anyone concerning the terms of the Settlement Agreement; and no order was entered by a Court as required by F.R.B.P. 9019. (Order Den. Defs.' Mot. to Dismiss, 12). This Court is satisfied that the failure to comply with F.R.B.P. 9019 bars the Defendants from relying on the doctrine of equitable estoppel and, therefore, their Motion for Summary Judgment is not supported by law and cannot be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Defendants' Motion for Summary Judgment (Doc. No. 79) be, and the same is hereby, denied and the matter shall promptly be scheduled for pretrial conference to determine the proper disposition of the claims asserted by the Trustee in her Complaint.